**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CLARENCE W. WRIGHT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Case No. 4:11CV2231 LMB** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM**

This is an action under 42 U.S.C. § 405(g) for judicial review of defendant's final decision

denying the application of Clarence W. Wright for Disability Insurance Benefits under Title II of

the Social Security Act and Supplemental Security Income under Title XVI of the Act. This case

has been assigned to the undersigned United States Magistrate Judge pursuant to the Civil Justice

Reform Act and is being heard by consent of the parties. See 28 U.S.C. § 636(c). Plaintiff filed a

Brief in support of the Complaint. (Doc. No. 17). Defendant filed a Brief in Support of the

Answer. (Doc. No. 22). Plaintiff has filed a Reply. (Doc. No. 23).

**Procedural History**

On February 13, 2009, plaintiff filed his application for benefits, claiming that he became

unable to work due to his disabling condition on July 1, 2001.[1] (Tr. 145-54). This claim was

denied initially, and following an administrative hearing, plaintiff's claim was denied in a written

---

[1]Plaintiff subsequently amended his onset of disability date to December 15, 2007. (Tr.
11).

opinion by an Administrative Law Judge (ALJ), dated December 2, 2010. (Tr. 72-78, 8-18).

Plaintiff then filed a request for review of the ALJ's decision with the Appeals Council of the

Social Security Administration (SSA), which was denied on December 5, 2011. (Tr. 7, 1-6).

Thus, the decision of the ALJ stands as the final decision of the Commissioner. See 20 C.F.R. §§

404.981, 416.1481.

## Evidence Before the ALJ

### A.    ALJ Hearing

Plaintiff's administrative hearing was held on July 21, 2010. (Tr. 29). Plaintiff was

present and was represented by counsel. (Id.). Also present was vocational expert Cheryl Geist.

(Id.).

The ALJ examined plaintiff, who testified that he was sixty-three years of age, and lived

alone in an apartment. (Tr. 30). Plaintiff stated that he took the bus, the Metro, and walked a

portion of the way to the hearing. (Tr. 31).

Plaintiff testified that he attended business college for about six months in the 1980s.

(Id.). Plaintiff stated that he did not earn a certificate or degree. (Id.).

Plaintiff testified that he last worked in November or December of 2007 at a temporary

job at a warehouse. (Id.). Plaintiff stated that this position lasted four to five weeks. (Id.).

Plaintiff testified that, prior to working at the warehouse, he was unemployed for a period

of six months to one year. (Tr. 32). Plaintiff stated that he was able to pay his rent during this

period by working at the security desk in the lobby of his apartment building. (Id.). Plaintiff

stated that his rent was $153.00 a month. (Id.). Plaintiff testified that he used food stamps to

purchase food. (Id.).

Plaintiff stated that he worked at AARP Foundation performing janitorial work from 2002 through 2006. (Id.). Plaintiff testified that he cleaned offices and maintained the grounds at this position. (Id.). Plaintiff stated that he left the position to try to find a better opportunity. (Id.).

Plaintiff testified that he performed the following other positions for short periods prior to working for the AARP Foundation: warehouse worker at Sears & Roebuck Company, van driver for Bristol Hotel Management, temporary jobs through Spherion Corporation, and temporary jobs for Interim Personnel. (Tr. 33).

Plaintiff stated that he became disabled on July 1, 2001, because he was diagnosed with diabetes and was hospitalized on that date. (Tr. 34). Plaintiff testified that he receives treatment for his diabetes through the Veterans Administration. (Id.). Plaintiff stated that he initially took pills for his diabetes, and that he took insulin at the time of the hearing. (Id.). Plaintiff testified that he also takes ibuprofen for pain. (Id.).

Plaintiff testified that he usually wakes up between 9:00 and 10:00 a.m., and does not do much, as he has no funds or transportation. (Id.). Plaintiff stated that he listens to music. (Tr. 35). Plaintiff testified that he prepares his own meals, cleans his apartment, and does his own laundry. (Id.). Plaintiff stated that he takes his laundry to a laundromat in his building. (Id.).

Plaintiff testified that the heaviest amount he is able to lift is five to ten pounds due to his joints. (Id.). Plaintiff explained that his elbows occasionally flare up, which causes him to be "out of commission" for about a week. (Id.). Plaintiff testified that this typically occurs approximately two times in a three-month period. (Id.). Plaintiff stated that he believes these flare-ups are caused by his diabetes. (Tr. 36). Plaintiff testified that he takes ibuprofen and applies ice when he experiences a flare-up. (Id.).

Plaintiff testified that he does not wear a brace or wrap, or use a cane or other assistive device to ambulate. (Id.).

Plaintiff stated that he enjoys reading books about music and "military stuff." (Tr. 37). Plaintiff testified that he was in the Army for approximately two years, and that he was stationed in Germany. (Id.).

Plaintiff stated that he plays the guitar, and that he has played at outdoor festivals, individuals' homes, and churches. (Id.). Plaintiff testified that he did not perform regularly, and that he had only played twice in the past two years. (Tr. 38).

Plaintiff stated that he is unable to sit for long before he has to get up and move around. (Id.). Plaintiff testified that he is able to stand for about thirty minutes. (Id.).

Plaintiff stated that he had not taken any long trips in the past few years prior to the hearing. (Tr. 39). Plaintiff testified that he did not visit with his family. (Id.).

Plaintiff's attorney examined plaintiff, who testified that he often falls asleep when he is sitting and reading. (Id.). Plaintiff stated that he naps on approximately five out of seven days a week, and that he feels fatigued when he does not nap. (Id.).

Plaintiff testified that he was able to stand or walk a total of three hours in an eight-hour period. (Tr. 40). Plaintiff stated that he had to slow down and take a break when he walked from the bus stop to the hearing office. (Id.). Plaintiff testified that he began to feel a slight dull pain in his chest when he was walking to the hearing. (Id.). Plaintiff stated that he experiences chest pain when he walks, climbs stairs, and bends over for long periods. (Tr. 41).

When asked whether he could perform a position that would involve bending over to stock items, plaintiff testified that the frequent bending "could prove to be a problem." (Id.).

Plaintiff stated that he also has poor eyesight. (Id.). Plaintiff testified that he wears prescription bifocals, which help. (Id.). Plaintiff stated that he still experiences blurry vision regularly, including when he reads. (Tr. 42).

Plaintiff testified that he had difficulty performing his warehouse position because his ankles would swell. (Id.). Plaintiff stated that he tried to take extra breaks. (Id.). Plaintiff testified that a new supervisor started decreasing his hours, and he was eventually "eased out of the job." (Tr. 43).

Plaintiff stated that his episodes of increased pain and fatigue last a minimum of one week. (Id.). Plaintiff testified that he had never been prescribed any strong pain medication. (Id.). Plaintiff stated that he lies down a lot and uses ice during these episodes. (Tr. 44).

The vocational expert, Cheryl Geist, next examined plaintiff, who testified that his most recent position was working part-time as a security guard at a high-rise apartment complex. (Tr. 45). Plaintiff stated that he sat at the front desk and checked-in visitors at this position. (Id.). Plaintiff testified that he last worked at this position in March of 2010. (Id.).

Plaintiff stated that he lifted more than fifty pounds at his warehouse job. (Tr. 46).

Ms. Geist testified that plaintiff's past work was classified as follows: security guard (sedentary, unskilled); janitor (medium, unskilled); van driver (medium, unskilled); warehouse worker (heavy, unskilled); and assembly (medium, semi-skilled). (Tr. 46-47).

The ALJ asked Ms. Geist to assume a hypothetical individual with plaintiff's background and the following limitations: lift fifty pounds occasionally and twenty-five pounds frequently; stand and/or walk at least six hours out of an eight-hour workday; sit at least six hours out of an eight-hour workday; avoid climbing ladders, ropes, and scaffolds; and avoid working at

unprotected heights and around unprotected dangerous machinery. (Tr. 47). Ms. Geist testified that the individual would be able to perform plaintiff's past security position, janitorial position, and driver position. (Id.).

The ALJ indicated that he would send plaintiff to see a doctor for an evaluation. (Tr. 49).

**B.      Relevant Medical Records**

Plaintiff received treatment at the Veterans Administration Medical Center ("VA") from July 2001 through the date of the hearing. On July 24, 2001, plaintiff was diagnosed with diabetes and was hospitalized due to complaints of fatigue, weakness, increased urination and increased thirst. (Tr. 343).

On August 4, 2003, plaintiff underwent x-rays of the lumbosacral spine, which revealed degenerative changes and multiple pancreatic calcifications. (Tr. 341).

Plaintiff underwent a rheumatology consult at the VA on June 20, 2007, due to complaints of a six-year history of left-sided ankle, knee, and elbow swelling, with pain and tenderness. (Tr. 494). Plaintiff reported that these symptoms started after he was diagnosed with diabetes in 2001, and occur one to two times a year with a duration of seven to ten days. (Tr. 495). Plaintiff indicated that taking ibuprofen and using ice packs with elevation leads to symptom alleviation. (Id.). Upon physical examination, plaintiff had full range of motion of the elbows, with no edema or tenderness; full range of motion of the knees, with bony enlargement but no edema or tenderness; and full range of motion of the ankles with no tenderness, erythema, or edema. (Tr. 496). It was noted that plaintiff was asymptomatic at the time, with no significant exam findings or lab values. (Id.). Plaintiff was advised to call the rheumatology clinic for an appointment when an acute exacerbation occurs. (Id.).

Plaintiff received regular vision examinations at the VA between 2001 and 2010. In September 2008, June 2009, and January 2010, plaintiff was diagnosed with insulin-dependent diabetes mellitus without ocular manifestations, mild nuclear cataracts not significantly affecting vision, suspected glaucoma, and refracting error/presbyopia.[2] (Tr. 518-19, 642, 618). Plaintiff's visual acuity was 20/20. (Id.).

Plaintiff also received podiatric care. Plaintiff was diagnosed with flat feet, and was treated for inflamed keratomas.[3] (Tr. 500, 514, 529, 542). Plaintiff was prescribed prosthetic shoes as well as inserts for individuals with diabetes mellitus. (Tr. 500).

Plaintiff received regular treatment for his diabetes at the VA from July 2001 through January 2010. (Tr. 337-463, 470-571, 575-661). On a November 28, 2007, follow-up, plaintiff denied any chest pain, increase in urine output, shortness of breath, or pain or swelling in any joints. (Tr. 536). Plaintiff reported that he was not taking Metformin[4] for three weeks because he had run out, and that his sugars were running high. (Id.). Plaintiff also reported that he had spilled hot oil on his right leg and sustained first degree burns. (Id.). Plaintiff's medications were listed as aspirin, insulin, Lisinopril,[5] Zocor,[6] and Metformin. (Tr. 537). Plaintiff's examination revealed no abnormalities. (Id.). The impression of Farnaz Mohammadi, M.D. was diabetes

---

[2]The physiologic loss of accommodation in the eyes in advancing age. Stedman's Medical Dictionary, 1556 (28th Ed. 2006).

[3]A callus. See Stedman's at 1025.

[4]Metformin is indicated as an adjunct to diet and exercise to improve glycemic control in patients with type 2 diabetes. See Physician's Desk Reference (PDR), 3072 (63rd Ed. 2009).

[5]Lisinopril is indicated for the treatment of hypertension. See PDR at 2088.

[6]Zocor is indicated for the treatment of high cholesterol. See PDR at 2136.

mellitus, high cholesterol, hypertension, insomnia, colonic polyps, neutropenia,[7] and right leg first degree burn. (Tr. 538). Dr. Mohammadi adjusted plaintiff's medications. (Id.).

On a June 11, 2008 follow-up, Dr. Mohammadi stated that plaintiff's sugars were not well-controlled. (Tr. 531). Dr. Mohammadi noted that he learned that plaintiff was changing the dose of his insulin frequently depending on his blood sugars. (Id.). Dr. Mohammadi increased plaintiff's dosage of Metformin and started plaintiff on Lantus.[8] (Tr. 532). Dr. Mohammadi indicated that plaintiff's hypertension was well-controlled. (Id.).

On July 23, 2008, Dr. Mohammadi indicated that plaintiff's sugars were better controlled after changing his medications, although he reported low sugars during the afternoon. (Tr. 526). Dr. Mohammadi advised plaintiff to take his medication at different times. (Id.).

On September 3, 2008, plaintiff reported that his sugars were better controlled and that he did not have many hypoglycemic episodes after the changes that were made to his medication regimen. (Tr. 521). Dr. Mohammadi noted that plaintiff had admitted to not eating breakfast, which might be a cause of his low sugars at times in the afternoons. (Tr. 523).

On December 10, 2008, plaintiff reported that his sugars were better controlled and that he did not have many hypoglycemic episodes. (Tr. 510). Plaintiff reported pain in his right ankle that lasted for three days one month prior. (Id.). Dr. Mohammadi noted that plaintiff's ankle pain was probably secondary to arthritis/neuropathy. (Tr. 511). Plaintiff reported that he felt better after taking ibuprofen. (Id.). On February 22, 2009, it was noted that plaintiff's blood sugar

---

[7]The presence of abnormally small numbers of neutrophils in the circulating blood. See Stedman's at 1317.

[8]Lantus is indicated for the treatment of diabetes in patients who require long-acting insulin for the control of hyperglycemia. See PDR at 2750.

levels were worse compared to her prior visit, and that plaintiff's insulin would have to be increased.  (Id.).

On April 15, 2009, plaintiff reported experiencing symptoms of hypoglycemia in the middle of the night.  (Tr. 650).  Plaintiff denied increased thirst, chest pain, increase in urine output, or shortness of breath.  (Id.).  Dr. Mohammadi indicated that plaintiff's sugars were better controlled, and discontinued plaintiff's Metformin.  (Tr. 652).  Plaintiff continued to report right ankle pain, which improved with ibuprofen.  (Tr. 653).  Plaintiff also reported experiencing right shoulder pain when he tries to raise his right arm above his right shoulder.  (Tr. 654).

On July 22, 2009, Dr. Mohammadi noted that plaintiff was adjusting his insulin on his own and taking it at different times throughout the day when his sugars were elevated, even though he acknowledged he knew it was a once a day insulin.  (Tr. 634).  Dr. Mohammadi started plaintiff on insulin injections, and continued him on Lantus.  (Tr. 636).

On September 2, 2009, plaintiff's log showed that his sugars were consistently elevated.  (Tr. 629).  Dr. Mohammadi noted that plaintiff was a musician and works during the night and does not take his Lantus at night; and he also skips meals.  (Id.).  Dr. Mohammadi advised plaintiff regarding the importance of good glycemic control, and advised him not to take his insulin injection if he is going to skip his meal.  (Id.).  Dr. Mohammadi increased plaintiff's dosage of Lantus.  (Tr. 631).

On October 14, 2009, Dr. Mohammadi again noted that plaintiff worked during the night and did not take Lantus until the morning, and that plaintiff skipped meals at times.  (Tr. 621).  Plaintiff's blood sugars continued to be elevated.  (Id.).  Dr. Mohammadi noted that plaintiff had skipped his scheduled appointment with the nutritionist.  (Id.).  Dr. Mohammadi again advised

plaintiff regarding the importance of good glycemic control. (Id.). Dr. Mohammadi's assessment was sugars consistently elevated, but definitely better control compared to the last visit. (Tr. 623). He increased plaintiff's dosage of Lantus. (Id.). Plaintiff's dosage of Lisinopril was also increased. (Id.).

On January 20, 2010, Dr. Mohammadi indicated that plaintiff's sugars were better controlled. (Tr. 611). Plaintiff continued to skip meals. (Id.). Plaintiff's medications were continued. (Tr. 613).

On April 12, 2010, plaintiff reported to Paula J. Gallego, advanced practice nurse, with complaints of nasal congestion. (Tr. 609). Plaintiff also reported that he sometimes experiences chest pressure when walking. (Id.). Plaintiff underwent a stress test on April 29, 2010, which was inconclusive. (Tr. 657). Plaintiff had to stop the test due to fatigue. (Id.).

On August 30, 2010, plaintiff saw Sarwath Bhattacharya, M.D., for an internal medicine examination. (Tr. 664-67). Plaintiff's chief complaints were listed as: diabetes, hypertension, and chest pain. (Tr. 664). Plaintiff reported that he had left his last position in 2007 because his employer ran out of work for him. (Id.). Plaintiff denied any history of retinopathy, neuropathy, tingling or numbness in the toes, or weakness. (Id.). Plaintiff reported experiencing some dull chest pain located in the chest wall, which was related to some exertion. (Tr. 665). Plaintiff also reported occasional shortness of breath, which does not occur with his chest pain. (Id.). Plaintiff reported that, on a good day, he can walk over six blocks without any problem, stand one-and-a-half hours, sit for one-and-a-half hours, lift thirty pounds, and climb two flights of stairs. (Id.). Plaintiff indicates that he shops for groceries, cooks, does laundry, and walks five to ten blocks almost daily for exercise. (Id.). Plaintiff reported smoking a pipe one to two times daily. (Tr.

666).  Upon examination, plaintiff's vision in both eyes was 20/20, no cardiac abnormalities were noted, his gait appeared within normal limits, he was able to walk on his heels and toes "pretty good," he was able to flex and touch his toes, he had no difficulty getting up and down the exam table, his straight leg raise was slightly reduced because of hamstring tightness, he had no edema of the extremities, full grip strength, good range of movement of the upper and lower extremities, and no sensory loss.  (Id.).  Dr. Bhattacharya's impression was insulin dependent diabetes mellitus without any manifestations of ocular disease, and no neuropathy or end organ damage; hypertension, which was stable; and rather dull chest pain.  (Tr. 667).

Dr. Bhattacharya completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical).  (Tr. 668-73).  Dr. Bhattacharya expressed the opinion that plaintiff could occasionally lift twenty-one to fifty pounds, and occasionally carry eleven to twenty pounds; sit for five hours at a time and sit total of five hours in an eight-hour workday; stand for two hours at a time and stand a total of three hours in an eight-hour workday; walk two hours at a time and walk a total of three hours in an eight-hour workday; and use both of his hands and both of his feet frequently.  (Tr. 668-70).  In support of these findings, Dr. Bhattacharya noted: (1) hypertension-under control with meds; (2) type II diabetes mellitus stable; and (3) chest pain of unclear etiology.  (Tr. 668).  Dr. Bhattacharya found that plaintiff could never climb ladders or scaffolds; occasionally climb stairs and ramps; and frequently balance, stoop, kneel, crouch, or crawl.  (Tr. 671).  In support of these findings, Dr. Bhattacharya stated "dull chest pain with exertion."  (Id.).  Dr. Bhattacharya indicated that plaintiff's impairments did not affect his hearing or vision.  (Id.).  Finally, Dr. Bhattacharya indicated that plaintiff could never operate a motor vehicle; occasionally tolerate extreme cold and heat and vibrations; frequently be exposed to

unprotected heights, moving mechanical parts, humidity and wetness, dust, odors, flames and pulmonary irritants; and tolerate moderate noise.  (Tr. 672).

## The ALJ's Determination

The ALJ made the following findings:

1.      The claimant meets the insured status requirements of the Social Security Act through September 30, 2012.

2.      The claimant has not engaged in substantial gainful activity since December 15, 2007, the amended alleged onset date of disability.  (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3.      The claimant has the following severe impairments: diabetes mellitus, hypertension, and degenerative disc disease of the lumbar spine (20 CFR 404.1520(c) and 416.920(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments (20 CFR Part 404, Subpart P, Appendix 1, Part A) (20 CFR 404.1520(d), 404.1525, 404.1526).

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except for lifting or carrying more than 50 pounds occasionally and 25 pounds frequently; standing or walking more than 6 hours in an 8 hour workday with normal work breaks; sitting more than 6 hours in an 8-hour workday; climbing ladders, ropes, or scaffolds; and exposure to hazards.

6.      The claimant is capable of performing past relevant work as a security front desk officer, van driver, or janitor.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.      The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2001, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 13-17).

The ALJ's final decision reads as follows:

Based on the application for a period of disability and disability insurance benefits protectively filed on February 5, 2009, the claimant is not disabled (Social Security Act, sections 216(I) and 223(d)).

(Tr. 17).

## Discussion

### A. Standard of Review

Judicial review of a decision to deny Social Security benefits is limited and deferential to the agency. See Ostronski v. Chater, 94 F.3d 413, 416 (8th Cir. 1996). The decision of the SSA will be affirmed if substantial evidence in the record as a whole supports it. See Roberts v. Apfel, 222 F.3d 466, 468 (8th Cir. 2000). Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion. See Kelley v. Callahan, 133 F.3d 583, 587 (8th Cir. 1998). If, after review, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the denial of benefits must be upheld. See Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992). The reviewing court, however, must consider both evidence that supports and evidence that detracts from the Commissioner's decision. See Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996). "[T]he court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contrary." Burress v. Apfel, 141 F.3d 875, 878 (8th Cir. 1998). The analysis required has been described as a "searching inquiry." Id.

### B. The Determination of Disability

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416 (I) (1) (a); 42 U.S.C. § 423 (d) (1) (a). The claimant has the burden of proving that s/he has a disabling impairment. See Ingram v. Chater, 107 F.3d 598, 601 (8th Cir. 1997).

The SSA Commissioner has established a five-step process for determining whether a person is disabled. See 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 141-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d. 119 (1987); Fines v. Apfel, 149 F.3d 893, 894-895 (8th Cir. 1998). First, it is determined whether the claimant is currently engaged in "substantial gainful employment." If the claimant is, disability benefits must be denied. See 20 C.F.R. §§ 404.1520, 416.920 (b). Step two requires a determination of whether the claimant suffers from a medically severe impairment or combination of impairments. See 20 C.F.R §§ 404.1520 (c), 416.920 (c). To qualify as severe, the impairment must significantly limit the claimant's mental or physical ability to do "basic work activities." Id. Age, education and work experience of a claimant are not considered in making the "severity" determination. See id.

If the impairment is severe, the next issue is whether the impairment is equivalent to one of the listed impairments that the Commissioner accepts as sufficiently severe to preclude substantial gainful employment. See 20 C.F.R. §§ 404.1520 (d), 416.920 (d). This listing is found in Appendix One to 20 C.F.R. 404. 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be impaired. See 20 C.F.R. §§ 404.1520 (d), 416.920 (d). If it does not, however, the evaluation proceeds to the next step which inquires into whether the impairment prevents the claimant from performing his

or her past work.  <u>See</u> 20 C.F.R. § 404.1520 (e), 416.920 (e).  If the claimant is able to perform

the previous work, in consideration of the claimant's residual functional capacity (RFC) and the

physical and mental demands of the past work, the claimant is not disabled.  <u>See</u> <u>id.</u>  If the

claimant cannot perform his or her previous work, the final step involves a determination of

whether the claimant is able to perform other work in the national economy taking into

consideration the claimant's residual functional capacity, age, education and work experience.

<u>See</u> 20 C.F.R. §§ 404.1520 (f), 416.920 (f).  The claimant is entitled to disability benefits only if

s/he is not able to perform any other work.  <u>See</u> <u>id.</u>  Throughout this process, the burden remains

upon the claimant until s/he adequately demonstrates an inability to perform previous work, at

which time the burden shifts to the Commissioner to demonstrate the claimant's ability to perform

other work.  <u>See</u> <u>Beckley v. Apfel</u>, 152 F.3d 1056, 1059 (8th Cir. 1998).

C.     <u>**Plaintiff's Claims**</u>

        Plaintiff argues that the ALJ erred in determining plaintiff's RFC.  Specifically, plaintiff

contends that the ALJ failed to include all of the limitations found by Dr. Bhattacharya.  Plaintiff

also argues that the ALJ failed to provide a narrative discussion describing how the evidence

supported his RFC conclusions.

        RFC is what a claimant can do despite his limitations, and it must be determined on the

basis of all relevant evidence, including medical records, physician's opinions, and claimant's

description of his limitations.  <u>Dunahoo v. Apfel</u>, 241 F.3d 1033, 1039 (8th Cir. 2001).  Although

the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant

evidence, a claimant's RFC is a medical question.  <u>Hutsell v. Massanari</u>, 259 F.3d 707, 711 (8th

Cir. 2001) (citing <u>Lauer v. Apfel</u>, 245 F.3d 700, 704 (8th Cir. 2001)).  Therefore, an ALJ is

required to consider at least some supporting evidence from a medical professional.  See Lauer,

245 F.3d at 704 (some medical evidence must support the determination of the claimant's RFC);

Casey v. Astrue, 503 F.3d 687, 697 (the RFC is ultimately a medical question that must find at

least some support in the medical evidence in the record).  An RFC determination made by an

ALJ will be upheld if it is supported by substantial evidence in the record.  See Cox v. Barnhart,

471 F.3d 902, 907 (8th Cir. 2006).

> The ALJ made the following determination regarding plaintiff's RFC:
>
> After careful consideration of the entire record, the undersigned finds that the
> claimant has the residual functional capacity to perform medium work as defined
> in 20 CFR 404.1567(c) and 416.967(c) except for lifting or carrying more
> than 50 pounds occasionally and 25 pounds frequently; standing or walking more
> than 6 hours in an 8 hour workday with normal work breaks; sitting more than 6
> hours in an 8-hour workday; climbing ladders, ropes, or scaffolds; and exposure to
> hazards.

(Tr. 14).

In determining plaintiff's RFC, the ALJ first assessed the credibility of plaintiff's subjective

complaints of pain and limitations under Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

Polaski requires the consideration of:  (1) the claimant's daily activities; (2) the duration,

frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage,

effectiveness and side effects of medication; and (5) functional restrictions.  739 F.2d at 1322.

The ALJ noted that the objective medical evidence did not support plaintiff's allegations

of disability.  Although the ALJ may not discount subjective complaints solely because they are

not fully supported by the objective medical evidence, the lack of supporting objective medical

evidence may be considered as a factor in evaluating the claimant's credibility.  See Curran-

Kicksey v. Barnhart, 315 F.3d 964, 968 (8th Cir. 2003).

The ALJ noted that plaintiff has received minimal or conservative treatment, and there is no evidence that plaintiff's prescribed medication is not generally effective when taken as prescribed or that it imposes significant adverse side effects. (Tr. 16). The ALJ stated that plaintiff's diabetes is generally controlled with compliant prescribed therapy, and there is no evidence of complication or end organ dysfunction (retinopathy, neuropathy, or nephropathy). (Id.). The ALJ also stated that plaintiff's hypertension is well controlled with prescribed medication, with no evidence of end organ dysfunction. (Id.). The ALJ noted that, while plaintiff has been diagnosed with degenerative disc disease of the lumbar spine, he has not sought medical treatment for complaints of back pain during the relevant period of alleged disability, and physical examinations have been unremarkable with no evidence of lumbar spine tenderness, range of motion limitation, or neurological deficits. (Id.). The ALJ pointed out that plaintiff has a normal gait, and is able to ambulate independently; has no joint or spine abnormality or range of motion limitation; no muscle atrophy, spasm, or weakness; no neurological deficits; and no inflammation signs. The ALJ's findings are supported by the medical evidence of record.

The ALJ discussed plaintiff's daily activities and found that they were inconsistent with his allegations of disabling symptoms and limitations. (Tr. 15). The ALJ noted that plaintiff is able to live and function independently. (Id.). Plaintiff testified that he prepares his own meals, cleans his apartment, does his own laundry, enjoys listening to music, reads books, and plays the guitar. (Tr. 34-35, 37). Significant daily activities may be inconsistent with claims of disabling pain. See Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001). Further, plaintiff testified that he engages in minimal activity not due to pain or limitation from his impairments but, rather, due to lack of finances and transportation. (Tr. 34).

The ALJ also noted that plaintiff did not appear in any obvious credible physical discomfort during the hearing. (Tr. 16). "While the ALJ's observations cannot be the sole basis for his decision, it is not an error to include his observations as one of several factors." Lamp v. Astrue, 531 F.3d 629, 632 (8th Cir. 2008).

The ALJ also discussed the opinion evidence. The ALJ indicated that he was assigning "significant weight" to the opinions of examining physician Dr. Bhattacharya, who found "in substance that the claimant had the capacity to perform a limited range of medium exertional work activity with non-exertional postural and environmental limitations." (Tr. 16). The ALJ stated that he was giving "significantly less weight to that part of the examining physician's exertional restrictions pertaining to the claimant's capacity to stand, walk, or sit." (Id.). The ALJ noted that physical examinations during the relevant period of alleged disability have been essentially normal and the limitations pertaining to plaintiff's ability to stand, walk, or sit are unsupported by any clinical finding or explanation by Dr. Bhattacharya. (Id.).

The ALJ concluded that the objective medical evidence supports a finding that plaintiff has impairments that impose symptoms and limitations that preclude plaintiff from performing more than medium exertional work activity with precautionary non-exertional postural and environmental limitations. (Tr. 17).

Plaintiff contends that the ALJ erred in failing to include all of the limitations assessed by Dr. Bhattacharya. Plaintiff argues that, in rejecting some of Dr. Bhattacharya's findings, the ALJ improperly drew his own inferences from medical reports. The ALJ has the role of resolving conflicts among the opinions of various treating and examining physicians. Pearsall v. Massanari, 274 F.3d 1211, 1219 (8th Cir. 2001).

- 18 -

In evaluating the opinions of Dr. Bhattacharya, the ALJ did not, as suggested by plaintiff, substitute his opinions for those of the physician. Rather, the ALJ resolved apparent conflicts between Dr. Bhattacharya's opinions and his treatment notes, as was his responsibility. "'[An] ALJ may reject the opinion of any medical expert where it is inconsistent with the medical record as a whole.'" Finch v. Astrue, 547 F.3d 933, 938 (8th Cir. 2008) (quoting Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002)). See also Guilliams v. Barnhart, 393 F.3d 798, 803 (8th Cir. 2005) (finding that the ALJ had not simply substituted his opinion for the medical evidence when determining the claimant's RFC, but had assessed that RFC based on all the relevant evidence). The ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity base don all relevant evidence." Roberts, 222 F.3d at 469.

Dr. Bhattacharya saw plaintiff on one occasion for a consultative internal medicine examination. Dr. Bhattacharya completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical), in which he expressed the opinion that plaintiff could occasionally lift twenty-one to fifty pounds, and occasionally carry eleven to twenty pounds; sit for five hours at a time and sit a total of five hours in an eight-hour workday; stand for two hours at a time and stand a total of three hours in an eight-hour workday; walk two hours at a time and walk a total of three hours in an eight-hour workday; and use both of his hands and both of his feet frequently. (Tr. 668-70). Dr. Bhattacharya found that plaintiff could never climb ladders or scaffolds; occasionally climb stairs and ramps; and frequently balance, stoop, kneel, crouch, or crawl. (Tr. 671). Finally, Dr. Bhattacharya indicated that plaintiff could never operate a motor vehicle; occasionally tolerate extreme cold and heat and vibrations; frequently be exposed to unprotected heights, moving mechanical parts, humidity and wetness, dust, odors, flames and pulmonary

irritants; and tolerate moderate noise.  (Tr. 672).

The undersigned finds that the ALJ provided sufficient reasons for declining to include all of the limitations found by Dr. Bhattacharya.  The ALJ found that the limitations assessed by Dr. Bhattacharya were unsupported by any clinical findings or explanation by Dr. Bhattacharya.  (Tr. 16).  As noted by the ALJ, Dr. Bhattacharya's examination was essentially unremarkable.  (Tr. 14, 666).  Plaintiff's vision was 20/20 in both eyes, no cardiac abnormalities were observed, his gait was within normal limits, he was able to walk on his heels and toes, he was able to flex and touch his toes, he had no difficulty getting up and down the exam table, his straight leg raise was slightly reduced only because of hamstring tightness, he had no edema of the extremities, full grip strength, good range of movement of the upper and lower extremities, and no sensory loss.  (Tr. 666).  In addition, plaintiff reported to Dr. Bhattacharya that he was able to walk approximately ten blocks daily for exercise, stand and sit for one-and-a-half hours each, lift thirty pounds, and climb two flights of stairs.  (Tr. 665).  Dr. Bhattacharya's impression was: insulin dependent diabetes mellitus without any manifestations of ocular disease, and no neuropathy or end organ damage; hypertension, which was stable; and rather dull chest pain.  (Tr. 667).

In support of his findings regarding plaintiff's functional limitations, Dr. Bhattacharya stated only hypertension-under control with meds; type II diabetes mellitus stable; and chest pain of unclear etiology.  (Tr. 668).  Dr. Bhattacharya, however, failed to explain how these diagnoses would result in the limitations he found.  Dr. Bhattacharya's own examination revealed minimal findings.  In addition, although Dr. Bhattacharya reviewed plaintiff's records, he fails to point to any objective findings in the record to support his opinions.  Thus, Dr. Bhattacharya's opinions are unsupported by the record.

The ALJ indicated that he was assigning significant weight to Dr. Bhattacharya's general opinion that plaintiff had the capacity to perform a limited range of medium exertional work activity with non-exertional postural and environmental limitations, while assigning less weight to Dr. Bhattacharya's specific findings. (Tr. 16). Dr. Bhattacharya was a consulting physician and examined plaintiff on only one occasion. As such, the ALJ was not required to assign controlling weight to his opinions. The ALJ provided sufficient reasons for declining to include all of the limitations found by Dr. Bhattacharya. The RFC formulated by the ALJ was based on Dr. Bhattacharya's findings on examination, as well as other objective medical evidence in the record, rather than the conclusory opinions provided in Dr. Bhattacharya's medical source statement.

Plaintiff also contends that the ALJ erred in failing to provide a narrative discussion describing how the evidence supported his RFC determination in accordance with SSR 96-8p. SSR 96-8p requires the ALJ to conduct a function-by-function assessment before expressing a claimant's RFC in terms of exertional levels. SSR 96-8p. The ruling cautions that a failure to conduct the function by function assessment "could result in the adjudicator overlooking some of an individual's limitations or restrictions." Depover v. Barnhart, 349 F.3d 563, 567 (8th Cir. 2003) (citing SSR 96-8p, 1996 WL 374184 at *1). Therefore, it is not enough for an ALJ to simply describe a claimant's RFC in general terms and fail to specify the details of the claimant's RFC. See Pfitzner v. Apfel, 169 F.3d 566, 568-69 (8th Cir. 1999). However, an ALJ's failure to make specific findings as to every function does not necessarily indicate that the ALJ overlooked the functions that he failed to specifically address. See Depover, 349 F.3d at 567 (holding that the ALJ implicitly found that the claimant was not limited in functions not specifically addressed in the decision, where the ALJ did specifically address other functions).

Here, the ALJ did not simply express plaintiff's RFC in general terms. Rather, the ALJ made specific findings regarding plaintiff's ability to lift and carry, stand, walk, sit, and climb, and imposed an environmental limitation. (Tr. 14). With regard to plaintiff's argument that the ALJ failed to provide a narrative link between the evidence and the RFC findings, the ALJ need not provide each limitation in the RFC immediately followed by a list of the specific evidence supporting that limitation. See Wiese v. Astrue, 552 F.3d 728, 734 (8th Cir. 2009). See also Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) ("[A]n ALJ is not required to discuss every piece of evidence submitted," and "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered"). Further, "a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency has no practical effect on the outcome of the case." Senne v. Apfel, 198 F.3d 1065, 1067 (8th Cir. 1999).

In this case, the rationale of the ALJ's RFC determination is clear. The ALJ provided a thorough summary of the medical and other evidence of record prior to determining plaintiff's RFC. The ALJ accurately noted that physical examinations during the relevant period of alleged disability have been essentially normal, and that plaintiff's impairments have been well controlled with medication. (Tr. 16). As previously discussed, the ALJ performed a proper credibility analysis and determined that plaintiff's allegations of a disabling impairment were not credible. In determining plaintiff's RFC, the ALJ also relied, in part, on Dr. Bhattacharya's findings on examination, and on his general conclusion that plaintiff was capable of performing a range of medium work. The record does not support the presence of greater limitations than those found by the ALJ. Thus, the ALJ's RFC is supported by substantial evidence in the record as a whole.

After properly determining plaintiff's RFC, the ALJ found that plaintiff was capable of performing his past work as a security front desk officer, van driver, or janitor, and that plaintiff was not, therefore, disabled. (Tr. 17). "If the ALJ determines the claimant can perform her past relevant work, the claimant is not disabled." Young v. Astrue, 702 F.3d 489, 491 (8th Cir. 2013) (citing 20 C.F.R. § 404.1520(f)).

## Conclusion

Substantial evidence in the record as a whole supports the decision of the ALJ finding plaintiff not disabled because the evidence of record does not support the presence of a disabling impairment. Accordingly, Judgment will be entered separately in favor of defendant in accordance with this Memorandum.

Dated this 7th day of March, 2013.

LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE